**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| NATHANIEL ROBINSON,<br>　　　Petitioner, | Case No. 1:17-cv-104 |
| vs. | Dlott, J.<br>Wehrman, M.J. |
| WARDEN, LEBANON<br>CORRECTIONAL INSTITUTION,<br>　　　Respondent. | **REPORT AND<br>RECOMMENDATION** |

Petitioner, an inmate in state custody at the Lebanon Correctional Institution in Lebanon, Ohio, through counsel, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1). This matter is before the Court on respondent's return of writ and petitioner's reply. (Docs. 6, 13).

For the reasons stated below, the petition should be denied.

## I.  FACTUAL BACKGROUND

The Ohio Court of Appeals, First Appellate District set forth the following summary of facts that led to petitioner's convictions and sentence:[1]

> On October 20, 2013, Adam Brinkman was accosted by two assailants, Robinson and his codefendant Kenny Powe, as he walked home from a bar in Corryville at approximately 3:00 a.m. Just before his encounter with Robinson and Powe, Brinkman had passed a group of rowdy college students that had gathered on the balcony of a nearby condominium. As he walked past, Brinkman shouted at the group of students to "shut up." Robinson immediately approached Brinkman asking, "What did you say?" As Brinkman attempted to explain that his comments had not been directed at Robinson, Powe approached him from the other side. Robinson and Powe demanded that he turn over his money and cellular telephone. When Brinkman refused, Robinson took Brinkman's glasses and threw them into

---

[1] 28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence." In the absence of clear and convincing evidence to rebut the Ohio Court of Appeals' factual findings quoted below, those findings are presumed to be correct. *See McAdoo v. Elo,* 365 F.3d 487, 493-94 (6th Cir. 2004).

the street. Robinson then produced a large knife and proceeded to swipe at Brinkman's face. Brinkman took off running down the street, with Robinson and Powe in pursuit. A fire engine approached the group from the opposite direction, and its occupants witnessed Robinson and Powe attempting to slash Brinkman with the knife as they chased him. Robinson and Powe fled as the fire engine activated its lights and siren.

Lieutenant Steven Kathmann, with the Cincinnati Fire Department's Corryville station, called dispatch to report the incident, and stayed with Brinkman until the police arrived. Cincinnati Police Specialists Michael Harper and Jeremy Howard responded to the dispatch, which included a description of Robinson and Powe and referenced that a knife had been involved. As Specialists Harper and Howard canvassed nearby streets in their cruiser, they saw two subjects matching the broadcast description. The spotted subjects, Robinson and Powe, were stopped by the officers. Robinson and Powe initially refused to stop and were visibly nervous. A pat-down of the two did not reveal any weapons. Robinson and Powe were transported back to where Brinkman waited with the fire engine. Brinkman identified them as his attackers. They were then transported to the Corryville Fire Station and identified by Lieutenant Kathmann and fireman Aaron Turner, who had also witnessed the incident from the fire engine.

After transporting Robinson and Powe to the justice center, Specialists Harper and Howard canvassed for the knife that had been used in the attack on Brinkman. They found it between two vacant houses near where Robinson and Powe had been stopped. Brinkman identified the knife found by the officers as the knife that had been used by his assailant.

Robinson and Powe were indicted for aggravated robbery pursuant to R.C. 2911.01(A)(1) and robbery pursuant to R.C. 2911.02(A)(2). They were tried together before a jury, and both testified on their own behalf. Robinson's testimony initially corroborated that offered by Brinkman, as he stated that he had approached Brinkman after hearing Brinkman say "shut up," because he believed that the comment had been directed at him. But, in contrast to Brinkman's version of events, Robinson testified that he only produced his knife after Brinkman began to threaten him. Robinson testified that Powe, whom he did not personally know, witnessed the confrontation and approached to help. Robinson stated that neither he nor Powe had ever demanded that Brinkman turn over any money or phone, and he also denied slashing the knife at Brinkman. Robinson testified that after Brinkman had fled, he and Powe had walked down the street together, passing the fire truck. Robinson admitted to dropping the knife between the two vacant houses because he did not want to get caught with it. He further admitted that he had given the police a fictitious name upon arrest.

Powe testified that he had witnessed Robinson and Brinkman arguing as he was walking home on October 20, 2013, and he approached to see if he could help. According to Powe, Brinkman became very confrontational and threatened to harm

2

Robinson, so he and Robinson ran off.  Powe never saw a knife throughout the confrontation.

(Doc. 5, Ex. 6).

## II. PROCEDURAL HISTORY

### State Trial Proceedings

On October 29, 2013, the Hamilton County, Ohio grand jury returned a two-count indictment charging petitioner and his co-defendant with one count each of aggravated robbery and robbery.  (Doc. 5, Ex. 1).  Petitioner, through counsel, entered a plea of not guilty to all charges.

On January 6, 2014, following a guilty verdict at trial on both counts, petitioner was sentenced to a prison sentence of eleven years in the Ohio Department of Rehabilitation and Correction.  (Doc. 5, Ex. 2).

### Direct Appeal

On January 16, 2014, petitioner, through new counsel, filed a timely notice of appeal to the Ohio Court of Appeals.  (Doc. 5, Ex. 3).  Petitioner presented the following seven assignments of error for the court's consideration in his appellate brief, which was filed on September 29, 2014:

1. The trial court erred to the prejudice of Defendant-Appellant by permitting the prosecuting attorney to use a peremptory challenge to dismiss a prospective African-American juror.

2. The trial court erred to the prejudice of Defendant-Appellant by admitting into evidence the statements attributed to Defendant-Appellant when they had not been disclosed prior to trial.

3. The trial court erred to the prejudice of Defendant-Appellant by failing to grant a mistrial and order separate trials for the codefendants.

4. The trial court erred to the prejudice of Defendant-Appellant by allowing the State of Ohio to engage in numerous instances of prosecutorial misconduct thereby

3

    denying Defendant-Appellant of due process of law as guaranteed by the Fourteenth Amendment of the United States Constitution.

5. The trial court erred to the prejudice of Defendant-Appellant and violated his federal and state due process rights because his conviction was not supported by sufficient evidence.

6. The trial court erred to the prejudice of Defendant-Appellant as his conviction was against the manifest weight of the evidence presented at trial.

7. The trial court erred to the prejudice of Defendant-Appellant by imposing the maximum sentence.

(Doc. 5, Ex. 4). On March 6, 2015, Ohio appellate court overruled petitioner's assignments of error and affirmed the judgment of the trial court. (Doc. 5, Ex. 6).

**Ohio Supreme Court**

On April 16, 2015, petitioner, through counsel, filed a timely notice of appeal and memorandum in support of jurisdiction to the Ohio Supreme Court. (Doc. 5, Ex. 7, 8). In his memorandum in support of jurisdiction, petitioner presented the following six propositions of law:

1. A criminal defendant's Sixth and Fourteenth Amendment rights are violated when the prosecution uses a peremptory challenge to excuse an African-American juror, and the stated race-neutral reason is not legitimate, and only used as a pretext to justify dismissal of the juror.

2. The trial court commits reversible error when it admits a statement attributed to the Defendant when it was not disclosed prior to trial.

3. A trial court commits reversible error when it fails to grant a mistrial and provide co-defendants separate trials when, during the trial, it is revealed that inculpatory statements were made by both co-defendants, and the prosecution had not disclosed this evidence prior to trial.

4. A criminal defendant's due process rights as guaranteed by the Fourteenth Amendment are violated when the trial court permits the prosecution to engage in numerous instances of prosecutorial misconduct.

5. A criminal defendant's right to due process is violated when he is convicted of a crime supported by insufficient evidence, or the conviction is contrary to the

4

>    manifest weight of the evidence presented at trial.
>
> 6. The imposition of a maximum sentence must be justified by legitimate sentencing factors, not merely in response to a public outcry to impose harsh sentences for offenses committed near a college campus.

(Doc. 5, Ex. 8). On September 16, 2015, the Ohio Supreme Court declined jurisdiction to hear petitioner's case. (Doc. 5, Ex. 10).

### United States Supreme Court

Petitioner filed a petition for a writ of certiorari in the United States Supreme Court on January 14, 2016. (*See* Doc. 5, Ex. 11). On February 29, 2016, the petition was denied. (*Id.*).

### Federal Habeas Corpus

Petitioner filed the instant federal habeas corpus action on February 14, 2017. (Doc. 1). In the petition, petitioner raises the following single ground for relief:

> **Ground One:** Mr. Robinson's right to [a] jury of his peers and of equal protection of the law under the Fifth and Fourteenth Amendments to the United States Constitution were violated when the trial court permitted the State to exercise a peremptory challenge based on race with only a pretextual explanation for the strike.

*Id.*

Respondent has filed a return of writ in opposition to the petition, to which petitioner has replied. (Doc. 5, 13).

### III. THE PETITION SHOULD BE DENIED

In this federal habeas case, the applicable standard of review governing the adjudication of constitutional issues raised by plaintiff to the state courts is set forth in 28 U.S.C. § 2254(d). Under that provision, a writ of habeas corpus may not issue with respect to any claim adjudicated on the merits by the state courts unless the adjudication either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States

>Supreme Court; or
>
>(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Otte v. Houk,* 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000)), *cert. denied*, 132 S.Ct. 1743 (2012). "A state court's adjudication only results in an 'unreasonable application' of clearly established federal law when 'the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Id.* at 599-600 (quoting *Williams,* 529 U.S. at 413).

The statutory standard, established when the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) was enacted, is a difficult one for habeas petitioners to meet. *Id.* at 600. As the Sixth Circuit explained in *Otte*:

>Indeed, the Supreme Court has been increasingly vigorous in enforcing AEDPA's standards. *See, e.g., Cullen v. Pinholster,* __ U.S. __, 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011) (holding that AEDPA limits a federal habeas court to the record before the state court where a claim has been adjudicated on the merits by the state court). It is not enough for us to determine that the state court's determination is *incorrect*; to grant the writ under this clause, we must hold that the state court's determination is *unreasonable*. . . . This is a "substantially higher threshold.". . . To warrant AEDPA deference, a state court's "decision on the merits" does not have to give any explanation for its results, *Harrington v. Richter,* __ U.S. __, 131 S.Ct. 770, 784, 178 L.Ed.2d 624 (2011), nor does it need to cite the relevant Supreme Court cases, as long as "neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer,* 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per curiam).

*Id.* (emphasis in original). The Supreme Court recently extended its ruling in *Harrington* to hold

6

that when a state court rules against a defendant in an opinion that "addresses some issues but does not expressly address the federal claim in question," the federal habeas court must presume, subject to rebuttal, that the federal claim was "adjudicated on the merits" and thus subject to the "restrictive standard of review" set out in § 2254(d). *See Johnson v. Williams*, __ U.S. __, 133 S.Ct. 1088, 1091 (2013).

Although the standard is difficult to meet, § 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington*, 131 S.Ct. at 786. In other words, to obtain federal habeas relief under that provision, the state prisoner must show that the state court ruling on the claim presented "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

The Supreme Court has made it clear that in assessing the merits of a constitutional claim under § 2254(d), the federal habeas court must apply the Supreme Court precedents that controlled at the time of the last state-court adjudication on the merits, as opposed to when the conviction became "final." *Greene v. Fisher*, __ U.S. __, 132 S.Ct. 38, 44-45 (2011); *cf. Otte,* 654 F.3d at 600 (citing *Lockyer v. Andrade,* 538 U.S. 63, 71-72 (2003)) (in evaluating the merits of a claim addressed by the state courts, the federal habeas court must "look to Supreme Court cases already decided at the time the state court made its decision"). In *Greene*, 132 U.S. at 44, the Court explained:

> [W]e held last term in *Cullen v. Pinholster*, 563 U.S. __, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011), that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the prisoner's claim on the merits. We said that the provision's "backward-looking language requires an examination of the state-court

7

decision at the time it was made." *Id.*, at __, 131 S.Ct. at 1398. The reasoning of *Cullen* determines the result here. As we explained, § 2254(d)(1) requires federal courts to "focu[s] on what a state court knew and did," and to measure state-court decisions *as of 'the time the state court renders its decision.'" Id.*, at __, 131 S.Ct. at 1399 (quoting *Lockyer v. Andrade,* 538 U.S. [at] 71-72 . . .; emphasis added).

Decisions by lower courts are relevant "to the extent [they] already reviewed and interpreted the relevant Supreme Court case law to determine whether a legal principle or right had been clearly established by the Supreme Court." *Otte*, 654 F.3d at 600 (quoting *Landrum v. Mitchell*, 625 F.3d 905, 914 (6th Cir. 2010), *cert. denied,* 132 S.Ct. 127 (2011)). The writ may issue only if the application of clearly-established federal law is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision." *McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000) (citing *Williams,* 529 U.S. at 412).

**A. Ground One is without merit.**

In Ground One, petitioner's sole ground for relief, petitioner contends that the trial court improperly overruled his challenge to the state's dismissal of a minority member of the jury venire under *Batson v. Kentucky*, 476 U.S. 79 (1986). Petitioner raised his *Batson* claim as an assignment of error on direct appeal. The Court of Appeals overruled the assignment of error, reasoning as follows:

> {¶ 10} In his first assignment of error, Robinson contends that the trial court erred by permitting the prosecutor to use a peremptory challenge to dismiss a prospective African–American juror in violation of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).
>
> {¶ 11} *Batson* reaffirmed the principle that the Equal Protection Clause prohibits a prosecutor from exercising a peremptory challenge to excuse a potential juror solely on the basis of the juror's race. *Id.* at 89. In *Batson*, the United States Supreme Court established a three-step procedure to review a claim that a peremptory challenge was motivated by racial discrimination. *Id.* at 97–98. First, the opponent of the peremptory strike must make a prima facie showing of racial discrimination. Next, the proponent of the peremptory strike must provide a race-neutral

8

> explanation for the strike. Last, the trial court must evaluate the explanation provided and determine if the opponent of the strike proved purposeful discrimination. *Id.*; *See State v. Sweeting*, 1st Dist. Hamilton No. C– 120733, 2013–Ohio–5097, ¶ 10, citing *State v. Were*, 118 Ohio St.3d 448, 2008–Ohio–2762, 890 N.E.2d 263, ¶ 61. A reviewing court will only reverse a trial court's finding that no discriminatory intent existed if that finding is clearly erroneous. *Sweeting* at ¶ 10.
>
> {¶ 12} Here, Robinson raised a *Batson* challenge after the state used a peremptory challenge to excuse an African–American juror from the panel over Robinson's objection. Although Robinson only raised the challenge with respect to one juror, he noted that the juror at issue was the second African–American to be excused by the state. In response to Robinson's prima facie showing, the state cited the juror's comments during voir dire as a race-neutral explanation for the strike. During voir dire, the state questioned the juror on a statement that she had provided on her juror questionnaire indicating that she felt that police officers abuse their powers. In response, the juror stated that "I don't think I indicated that all police do, but that is what I don't like about police officers, those that do abuse their powers. And that's just based on stories, the news." The state expressed concern over the juror's view of police officers. In reviewing the state's explanation, the trial court found that the state had provided a reasonable, race-neutral explanation.
>
> {¶ 13} The trial court's finding that the state had not been motivated by a discriminatory intent was not clearly erroneous. Robinson argues that further questioning of the juror showed that she would be a fair and impartial juror. But the explanation provided to justify a peremptory challenge need not rise to the level necessary to justify the exercise of a challenge for cause. *State v. Thomas*, 1st Dist. Hamilton No. C–120561, 2013–Ohio–5386, ¶ 18. The state's concern that the juror would not be able to abandon her prior views of police officers when evaluating the state's case constituted a legitimate race-neutral explanation. The first assignment of error is overruled.

(Doc. 5, Ex. 6 at PageID 65–66).

Upon review of the record, the undersigned finds that the Ohio Court of Appeals decision was not an unreasonable application of federal law.

As noted by the Ohio Court of Appeals, exclusion of individuals from a jury based on race violates the Equal Protection Clause of the United States Constitution. *Batson v. Kentucky*, 476 U.S. 79 (1986). *Batson* forbids race-based peremptory challenges by a prosecutor. A trial court must engage in a three-step process to evaluate a *Batson* claim:

9

> First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race. Second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question. Third, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination.

*Miller-El v. Cockrell*, 537 U.S. 322, 328-329 (2003) (internal citations to *Batson* omitted).

To make a *prima facie* showing of purposeful discrimination by the prosecutor, a defendant must show he is a member of a cognizable racial group; the prosecutor has exercised peremptory challenges to remove from the jury members of the defendant's race; and any additional facts and circumstances from which an inference could be drawn that the prosecutor used the peremptory challenges to exclude persons from the petit jury on account of their race. *Batson,* 476 U.S. at 96.

Once the defendant makes a *prima facie* showing of purposeful discrimination, the burden shifts to the State to come forward with a race-neutral explanation for challenging the prospective juror. *Batson,* 476 U.S. at 97. This is an extremely light burden. *Purkett v. Elem,* 514 U.S. 765, 768 (1995) (per curiam). At this step of the inquiry, the explanation tendered by the prosecutor need not be persuasive nor even plausible. *Id.* As the Supreme Court explained in *Hernandez v. New York*, 500 U.S. 352 (1991): "A neutral explanation in the context of our analysis here means an explanation based on something other than the race of the juror. At this step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Hernandez,* 500 U.S. at 360 (plurality opinion).

At the third step of the process, the court must determine whether the defendant has established purposeful discrimination. *Hernandez,* 500 U.S. at 359, 363 (plurality opinion) (citing *Batson,* 476 U.S. at 98). In making this determination, the trial court must assess the

plausibility and persuasiveness of the prosecutor's race-neutral explanation. *Rice v. Collins*, 546 U.S. 333, 338 (2006); *Miller-El v. Dretke*, 545 U.S. 231, 252 (2005). "At that stage, implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination." *Purkett,* 514 U.S. at 768. "If a prosecutor's proffered reason for striking a black panelist applies just as well to an otherwise-similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at *Batson's* third step." *Miller-El,* 545 U.S. at 241.

The trial court's decision at this step is accorded "great deference" by a reviewing court. *Hernandez,* 500 U.S. at 364 (plurality opinion); *see also Batson,* 476 U.S. at 98 n.21. "Deference to trial court findings on the issue of discriminatory intent makes particular sense in this context because . . . the finding 'largely will turn on evaluation of credibility.'" *Hernandez,* 500 U.S. at 365 (plurality opinion) (quoting *Batson,* 476 U.S. at 98 n.21)).

In the typical case, the decision will turn on whether counsel's race-neutral explanation for a peremptory challenge should be believed, wherein there "will seldom be much evidence bearing on that issue" and the "best evidence often will be the demeanor of the attorney who exercises the challenge." *Id.* "[E]valuation of the prosecutor's state of mind based on demeanor and credibility lies 'peculiarly within a trial judge's province.'" *Id.* (quoting *Wainwright v. Witt,* 469 U.S. 412, 428 (1985)). In determining the credibility of the prosecutor's race-neutral explanations, the court must consider the prosecutor's demeanor, how reasonable or how improbable the explanations, and whether the proffered explanation has some basis in accepted trial strategy. *Miller-El v. Cockrell*, 537 U.S. 322, 339 (2003).

A trial judge's ruling that the challenge was race-neutral must be upheld unless it is clearly erroneous. *Snyder v. Louisiana,* 552 U.S. 472, 477 (2008) (citing *Hernandez*, 500 U.S. at

369). In federal habeas corpus proceedings such as this, the state courts' factual findings on this issue are presumed correct unless petitioner demonstrates by clear and convincing evidence that such findings are erroneous. 28 U.S.C. § 2254(e)(1); *Purkett,* 514 U.S. at 769; *Hernandez,* 500 U.S. at 366 (plurality opinion). "Thus, a federal habeas court can only grant [the] petition if it was unreasonable to credit the prosecutor's race-neutral explanations for the *Batson* challenge." *Rice,* 546 U.S. at 338.

In this case, the *Batson* issue arose when the prosecutor exercised a peremptory challenge to excuse Prospective Juror Williams, who is African-American. (Doc. 5, Transcript at PageID 266–67). In support of the challenge, the prosecution offered the following reasons for excusing Williams:

> Ms. Williams put in her questionnaire that she's in criminal justice, yet too many officers abuse their power. I think that's a direct contradiction. It has nothing to do with her skin color.
>
> And Juror Number 8, Mr. Bedford, and Juror Number 11, Pierce, haven't been removed, and they are black.

(Doc. 5, Transcript at PageID 267–68). During voir dire, Williams was questioned about her answer in the jury questionnaire as follows:

> MS. DATILO: You said that police abuse their powers on your form. What's your experience—how do you live that experience?
>
> PROSPECTIVE JUROR A. WILLIAMS: I don't think I indicated that all police do, but that is what I don't like about police officers, those that do abuse their powers. And that's just based on stories, the news.

(Doc. 5, Transcript at PageID 250). Williams further stated that she had a cousin in law enforcement and that she did not believe her opinion about police officers would get in the way of her listening to the officers' testimony in the trial. (*Id.* at PageID 250–51). The trial court, after noting that the state had also excused a white juror, found that the prosecution proffered a

12

neutral reason supporting Ms. Williams being excused:

> THE COURT: So the prosecution stated a neutral reason at this point that's reasonable, so that's on the record. And this juror can be excused for that reason at this time.

(*Id.* at PageID 266).

The undersigned concludes that the First District Court of Appeals' decision on petitioner's *Batson* claim was not an objectively unreasonable application of *Batson* and its progeny.[2] Petitioner established that he and prospective juror Williams were African American. However, the prosecution's explanation regarding the juror's views on law enforcement was facially valid and race neutral. The trial judge accepted the prosecution's explanation as credible and petitioner has not met his burden of showing that it was "unreasonable to credit the prosecutor's race-neutral explanations." *Rice,* 546 U.S. at 338. Petitioner has failed to demonstrate by clear and convincing evidence that such findings are erroneous. 28 U.S.C. § 2254(e)(1).[3] Moreover, upon review of the trial transcript, this Court agrees with the Ohio Court

---

[2] In addition to the reasons set forth by the Ohio Court of Appeals, this Court notes that petitioner has pointed to nothing in the record to suggest that the prosecutor's justifications for striking Ms. Williams similarly applied to non-minority jurors who were not struck from the panel. *Cf. Miller-El v. Dretke*, 545 U.S. 231, 241 (2005). In *Miller-El,* the Supreme Court recognized that "[i]f a prosecutor's proffered reason for striking a black panelist applies just as well to an otherwise-similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at *Batson's* third step." This comparative juror analysis is inapplicable in the instant case where petitioner has pointed to no evidence demonstrating that white jurors possessed the same characteristics for which prospective juror Williams was stricken. Thus, this is not a case where the prosecutor's proffered explanation for striking an African American juror applied to an otherwise-similar non-African American juror who was permitted to serve. *Cf. Miller-El,* 545 U.S. at 241.

[3] Petitioner argues that the race-neutral explanation by the prosecutor was unreasonable "because it is *unquestionably true* that some law enforcement officers abuse their power." (Doc. 13 at PageID 369). However, in light of William's questionnaire and testimony during voir dire—that "I don't think I indicated all police do, but that is what I don't like about police officers, those that do abuse their powers"—the Ohio Court of Appeals reasonably determined that "[t]he state's concern that the juror would not be able to abandon her prior views of police officers when evaluating the state's case constituted a legitimate race-neutral explanation." *See e.g. Green v. Travis*, 414 F.3d 288, 230 (2nd Cir. 2005) ("a juror's perceived bias against law enforcement can constitute a race-neutral explanation for a peremptory challenge.").

13

of Appeals' determination that the record supports the factual basis for the state's peremptory challenges as to prospective juror Williams.

Accordingly, petitioner has not demonstrated that the state courts' adjudication of his *Batson* claim resulted in a decision that is contrary to, or involves an unreasonable application of, clearly established Supreme Court precedent, or is based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *See* 28 U.S.C. §2254(d); *see also Williams,* 529 U.S. at 402-03 (O'Connor, J.).

Further, petitioner has neither cited nor submitted clear and convincing evidence of purposeful discrimination by the prosecution sufficient to rebut the presumption of correctness to be accorded the state courts' conclusion that the prosecution did not discriminate on the basis of race in exercising the peremptory challenge in this case. *See* 28 U.S.C. § 2254(e)(1); *Purkett,* 514 U.S. at 769; *Hernandez,* 500 U.S. at 364-66; *Batson,* 476 U.S. at 98 n. 21.

Therefore, petitioner is not entitled to habeas corpus relief based on his *Batson* claim alleged in Ground One, his sole ground for relief in the petition.

## IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** with prejudice.

2. A certificate of appealability should not issue with respect to the claims alleged in the petition, which have been addressed on the merits herein, because petitioner has not stated a "viable claim of the denial of a constitutional right," nor are the issues presented "adequate to deserve encouragement to proceed further." *See Slack v. McDaniel*, 529 U.S. 473, 475 (2000) (citing *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)). *See also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and, therefore, should **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

    s/ J. Gregory Wehrman
J. Gregory Wehrman
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

NATHANIEL ROBINSON,  
    Petitioner,

vs.

WARDEN, LEBANON
CORRECTIONAL INSTITUTION,  
    Respondent.

Case No. 1:17-cv-104

Dlott, J.  
Wehrman, M.J.

### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.  This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).